IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>ISAAC WALLER,<br><br>*Defendant*. | Criminal No. 2:24-cr-90 - 1<br><br>Hon. William S. Stickman IV |

**<u>MEMORANDUM OPINION</u>**

WILLIAM S. STICKMAN IV, United States District Judge

A federal grand jury indicted Defendant Isaac Waller ("Waller") on April 24, 2024, with possession with intent to distribute crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count One), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three). (ECF No. 3). Waller filed a Motion to Suppress Evidence from March 2024 Arrest (ECF No. 61), mainly arguing that the local police officer in the Commonwealth of Pennsylvania who prepared the affidavit of probable cause in support of the arrest warrant violated Pennsylvania Rule of Criminal Procedure 544, thus the evidence recovered during his arrest should be suppressed. For the following reasons, the Court will deny the motion without an evidentiary hearing.

**I. AN EVIDENTIARY HEARING IS NOT WARRANTED**

Waller requested an evidentiary hearing on his suppression motion. Evidentiary hearings on motions to suppress are not granted as a matter of course. Federal Rule of Criminal Procedure 12(c)(1) states that a district court "may" schedule an evidentiary hearing on a pretrial

1

motion. FED. R. CRIM. P. 12(c)(1). In the context of a motion to suppress, the procedure for a defendant who seeks an evidentiary hearing is to "(1) state a colorable legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve that dispute." *United States v. Hines*, 628 F.3d 101, 108 (3d Cir. 2010). A motion to suppress only requires a hearing if it is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude" that the defendant has raised material facts related to his constitutional claim. *Id.* at 105; *see also United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). The purpose of an evidentiary hearing on a suppression motion "is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct—its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." *Hines*, 628 F.3d at 105.

There is no information before the Court evincing a genuine dispute over factual issues that require the development of an evidentiary record for the Court to make its determination on the motion. Waller is not really challenging the contents of the March 1, 2024, affidavit in support of the arrest warrant, and the Government "does not dispute that Officer Abbondanza did not file his March 1 affidavit with the same Magistrate Judge (Judge Orenstein) who presided over the withdrawal of the initial charges." (ECF No. 69, p. 24). When reviewing a magistrate (or state court judge's) determination of probable cause to issue a warrant, a district court should "[pay] great deference" to the magistrate's decision. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). In *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984), the Supreme Court emphasized that a reviewing court is not to conduct a "de novo probable cause determination" but is to decide merely "whether the evidence reviewed as a whole provided a substantial basis for the ... finding of probable cause." The duty of the reviewing court is to "ensure that the state district justice

had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause." *United States v. Mortimer*, 387 F. App'x 138, 140 (3d Cir. 2005) (citing *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993)). The case law makes clear that the Court's review is confined to the "four corners" of the affidavit that were before the state magisterial district judge. *Jones*, 994 F.2d at 1055. It would be improper for the Court to consider information elicited at a hearing that was not previously submitted to the magisterial district judge in support of the March 1, 2024, arrest warrant application.[1]

Whether Waller was subjected to an unlawful arrest is a legal question for the Court to resolve as there is no dispute that Waller had an active arrest warrant, he was arrested pursuant to that warrant, and a stolen, loaded firearm and drugs were discovered when he was arrested. The Court must decide the importance of the alleged non-compliance with a Commonwealth of Pennsylvania rule of criminal procedure in obtaining the arrest warrant, and its impact on this federal case. Waller seeks an evidentiary hearing to delve into his belief that "the officers who applied for and executed the warrant knew it was invalid under Pennsylvania law and chose to continue the execution of the warrant despite that knowledge; and the officers executed the invalid warrant with the hopes of initiating a federal prosecution...." (ECF No. 70, p. 2). However, it is not dispositive to the Court's resolution of the motion why the Commonwealth of Pennsylvania failed to prosecute Waller in a timely fashion and ultimately dismissed state charges, or, as discussed below, it failed to adhere to state criminal rules of procedure. Nor is it relevant why charges were filed against Waller in federal court. "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). "[S]o

---

[1] The Court has determined that Waller is not entitled to a *Franks* hearing.

3

long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Waller has failed to show the existence of a material factual dispute that would necessitate a hearing. The Court finds that a hearing would not be helpful to its resolution of Waller's suppression motion. Accordingly, his request for an evidentiary hearing is denied. Furthermore, the Court finds the parties' positions to be straightforward and deems oral argument unnecessary.

## II.   MERITS OF SUPPRESSION MOTION

At issue is the arrest warrant issued on March 1, 2024, by a Pennsylvania magisterial district judge. (ECF No. 61-4). The Fourth Amendment protects against unlawful searches and seizures. U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). The Government accurately states:

> The constitutional requirements of a valid arrest warrant are that (1) it be based on probable cause; (2) supported by oath or affirmation; (2) decided by a neutral and detached magistrate; (3) and that it describes with particularity the person to be arrested. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (noting that Fourth Amendment requires arrest warrants be based on probable cause, supported by oath or affirmation); *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975) (discussing constitutional requirement that neutral and detached magistrate decide probable cause before issuing arrest warrant); *United States v. Doe*, 703 F.2d 745, 747 (3d Cir. 1983) (describing particularity requirement for arrest warrants as constitutionally mandated).
>
> \*   \*   \*
>
> Therefore, so long as the arrest warrant at issue satisfied these constitutional requirements, resulting arrest was valid for Fourth Amendment purposes. *See United States v. Sed*, 601 F.3d 224, 228-29 (3d Cir. 2010) (noting, post-*Moore*, that Court needed to determine whether arrest was reasonable under Fourth Amendment after rejecting claim that evidence must be suppressed for violation of state law); *see also United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007) (noting, pre-*Moore*, that territorial procedural law did not determine

4

validity of arrest; rather, test was whether arrest "satisfied the Fourth Amendment's requirement that the arrest be reasonable.").

(ECF No. 69, pp. 9-10).

Waller does not argue that the constitutional requirements of a valid arrest warrant were not met. He does not argue that the March 1, 2024, warrant was not issued based on an oath or affirmation, and he cannot as the complaint was sworn to by Officer John Abbondanza ("Officer Abbondanza"). (ECF 61-4, p. 13). He does not argue that the warrant was insufficiently particular, and he cannot as it describes Waller by name, date of birth, and contains other identifying information. (ECF No. 61-4). At most, he argues the warrant was missing a seal, but he acknowledges that under Pennsylvania state law, this does not render the warrant defective. (ECF No. 61, p. 8). And Waller does not argue that the issuing authority, the Commonwealth of Pennsylvania magisterial district judge, was not neutral and detached.

As to probable cause, Waller offers no particular argument other than his argument about noncompliance with procedural rules of the Commonwealth of Pennsylvania, which the Court will discuss below. (ECF Nos. 61 and 70). Before doing so, the Court notes that the affidavit clearly established probable cause. It states as follows:

5

## POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number R 924838-5 | | Complaint/Incident Number ASAP-532572/23147379 |
|---|---|---|---|---|
| Defendant Name | First: ISAAC | | Middle: | Last: WALLER |

The following is a refile request. The original case was withdrawn due to a witness not appearing for court.

On Saturday, 9-16-23, my partner, Ofc. Orris and I, Ofc. Abbondanza, were conducting a proactive patrol of the Homewood section of the City of Pittsburgh. We were operating in a uniform capacity, utilizing a fully marked patrol vehicle equipped with emergency lights and sirens.

At approximately 0153hrs., we were driving in the 1200 block of Nolan Ct. when we observed a silver Chrysler Pacifica (TN 192BDPQ) parked along the left curb idling with its lights on. As we drove past the vehicle, we observed Hilltop Crips/ TKF gang member, Isaac Waller, in the driver's seat. Waller is known to have a suspended driver's license and was the sole-occupant of the vehicle. Ofc. Young and Ofc. Pace responded to our location as we attempted to speak with Waller. While approaching Waller on foot, he quickly accelerated further into Nolan Ct., conducted a three-point turn, and exited. As Waller drove past Ofc. Orris and I, we had a clear and unobstructed view of his face. Waller then turned left onto Mohler St. and accelerated at a high rate of speed, failing to utilize a turn signal. During this time, the rear hatch to Waller's vehicle was opened. Ofc. Young advised Ofc. Cherevka and Ofc. Noonan of the vehicle description and the fact that Waller's driver's license is currently under suspension. Ofc. Cherevka and Ofc. Noonan located Waller's vehicle on Frankstown Ave. Ofc. Noonan had a clear and unobstructed view of Waller as he was operating the vehicle. Ofc. Noonan and Ofc. Cherevka were able to position their patrol vehicle behind Waller on Brushton Ave. near Bennett St. Waller again quickly accelerated at a high rate of speed on Brushton Ave. Ofc. Noonan activated his emergency lights and sirens near the intersection of Brushton Ave. and Hamilton Ave. to conduct a traffic stop. Waller failed to yield and continued to drive West on Hamilton Ave. This behavior is consistent with individuals who are attempting to conceal or retrieve weapons and/or contraband. Waller then crossed over the double yellow line on Hamilton Ave. (Pittsburgh, PA) into the oncoming lane of travel and stopped. Waller immediately attempted to exit the vehicle. Ofc. Cherevka and Ofc. Noonan advised Waller to get back into the vehicle to which he refused. Ofc. Cherevka and Ofc. Noonan could immediately smell a strong odor of alcoholic beverage emanating from Waller's person. Waller refused to get back in the vehicle. Ofc. Noonan and Ofc. Cherevka had to forcefully detain Waller in handcuffs as he resisted. Ofc. Orris, Ofc. Young, Ofc. Pace and I arrived on scene during this time. Waller was highly agitated and non-compliant as he was yelling and resisting. Waller also had slurred speech, bloodshot and watery eyes, and would sway and stumble as he walked. Waller attempted numerous times to reach his hands into the rear of his pants and clench his buttocks while being searched. I had to forcefully pull Waller's hands out of the rear of his pants. Waller has been arrested on multiple occasions where he was found to have crack cocaine stored inside of his anus. Waller was also wearing a white shirt. Officers observed what appeared to be blood and/or feces on the back of the shirt near the bottom. It was more than apparent that Waller was physically incapable of safely operating a motor vehicle.

Search incident to arrest, Ofc. Noonan recovered $5147.00 U.S. currency from Waller's pants pockets. Ofc. Noonan recovered a black Apple iPhone from Waller's hands.

Ofc. Orris and I transported Waller to SDD. Due to Waller's aggressive demeanor and him resisting arrest, Standardized Field Sobriety Testing was unable to be conducted. While at SDD, Ofc. Stipetich asked Waller if he would submit to Standardized Field Sobriety Testing and a blood withdrawal to which he refused both. Waller refused to provide officers with a valid mailing address. Waller also stated numerous times to Ofc. Orris, Ofc. Stipetich, and I that he would beat the fuck out of us.

Ofc. Orris and I transported Waller to the Allegheny County Jail. Ofc. Orris and I advised ACJ staff that we believed Waller had shoved controlled substances into his anus. Waller refused a body scan and was strip searched by ACJ staff. C.O. Jacen Morris recovered a clear knotted bag containing crack cocaine from Waller's anus. I then took custody of the crack cocaine.

Waller's vehicle was illegally parked and towed by McGann and Chester to their impound lot. Ofc. Young conducted an inventory of the vehicle. Shoes, a jacket, an air mattress, and a hat were observed and documented on the tow slip.

**POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed: | OTN/LiveScan Number<br>R 924838-5 | | Complaint/Incident Number<br>ASAP-832672/231147379 |
|---|---|---|---|---|
| Defendant Name | First:<br>ISAAC | | Middle: | Last:<br>WALLER |

The crack cocaine was sent to the lab and tested positive for cocaine base. (23LAB05791) The official weight of the crack cocaine is 5.5 grams which is a much greater amount than mere personal use. No user paraphernalia was recovered from Waller. Waller appeared physically fit and in good health, not displaying any common characteristics of a crack cocaine user. Waller was in possession of $5147.00 U.S. currency kept in multiple denominations, consistent with street level narcotics sale. I conducted a labor employment history query of Waller. The last listed source of income for Waller was from the second quarter of 2022 to Kellermeyer Bergensons Services LLC. Waller's reported wages during this time is $254.72.

Due to the above reasons, I believe that Waller possessed crack cocaine with the intent to deliver it.

I confirmed that Waller's driver's license is currently under suspension.

I, _____JOHN ABBONDANZA_____, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

/JOHN ABBONDANZA
(Signature of Affiant)

Sworn to me and subscribed before me this __1__ day of __March__ __2024__

3/01/2024  Date  _____, Magisterial District Judge

My commission expires first Monday of January,

[SEAL]

(ECF No. 61-4). The affidavit describes Waller's flight from officers, his apparent intoxicated state, and the officer's basis for believing Waller was intoxicated. It outlines Waller's threats to "beat the fuck out of" the three arresting officers. It explains how Waller was discovered to be in possession of crack cocaine at the Allegheny County Jail. Officer Abbondanza notes that because Waller was in possession of a large amount of cash and lacked documented employment, he believed that Waller possessed the crack for distribution rather than personal use. (*Id.* at 12-13). All of this constituted probable cause to support state criminal charges for violating 18 Pa. C.S. § 5123, 75 Pa. C.S. § 3733(a), 30 P.S. § 780-113(a)(30), and 18 Pa. C.S. § 2706, and the issuance of an arrest warrant.

Waller's argument in support of suppression focuses on his belief that Officer Abbondanza violated Commonwealth of Pennsylvania procedural law with the sole purpose of prompting a federal prosecution. More specifically, he contends that the officer violated Pennsylvania Rule of Criminal Procedure 544 when refiling for an arrest warrant on March 1, 2024. The Court holds that any state procedural misstep, if it can even be categorized as such, is irrelevant because the arrest warrant was constitutionally valid, the arrest of Waller meets constitutional standards, and no prejudice exists.

"A technical violation of a state procedural rule does not automatically rise to the level of a Fourth Amendment violation requiring suppression of the evidence seized." *United States v. Brookins*, 413 F. App'x 509, 512 (3d Cir. 2011) (citing *Virginia v. Moore*, 553 U.S. 164, 173 (2008)). "Rather, [the movant] must demonstrate that the technical violations amounted to a constitutional deprivation; mere conclusory allegations are insufficient." *Id.* at 513 (citing *Voigt*, 89 F.3d at 1071 n.10). "The suppression remedy remains viable where a sufficient showing of prejudice is made, that is, prejudice in the sense that it offends concepts of fundamental fairness

or due process." *United States v. Hall*, 505 F.2d 961, 964 (3d Cir. 1974) (discussing violation of Federal Rule of Criminal Procedure 41).

Waller states that he "understands and acknowledges (*See* ECF No. 61 at 11) that a procedurally invalid state warrant does not automatically render a federal prosecution invalid..." (ECF No. 70, p. 4). Nonetheless, he contends that sufficient prejudice exists to warrant suppression. Waller is of the view that the Commonwealth of Pennsylvania did not exercise due diligence in prosecuting him and it was prejudicial. The state charges initially filed on September 16, 2023, were withdrawn on January 24, 2024, due to law enforcement witnesses failing to appear at scheduled preliminary hearings. The charges against him were refiled on March 1, 2024, and the items recovered from Waller on that date during the execution of the arrest warrant are the subject of this federal prosecution. (ECF No. 61, p. 2); (ECF No. 61-4). Meanwhile, in state court, Waller proceeded to a preliminary hearing on November 14, 2024, at which time the magisterial district judge permitted the Commonwealth of Pennsylvania to withdraw and refile charges. (ECF Nos. 61-3 and 61-5). Ultimately, the state charges against Waller were voluntarily dismissed by the Allegheny County District Attorney's Office on March 12, 2025. (ECF No. 61-5). In addition to these events, Waller contends that it is of import that the March 1, 2024, affidavit was filed in front of a different magisterial district judge and lacked a seal. (*Id.*). Waller posits that all of this combined prejudices him under "his Fourth, Fifth, and Fourteenth Amendment rights." (*Id.*); (*See also* ECF No. 70, pp. 4-5).

The Court finds that Waller has not established the type of prejudice that rises to the level of a constitutional deprivation warranting suppression of the evidence in this federal case. Nothing suggests that the state court's procedural failures somehow contributed to an alteration or manipulation of the facts yielding to the magisterial district judge's finding of probable cause

on March 1, 2024, and the issuance of the arrest warrant. Waller has not made (and cannot make) any persuasive argument that the application for the warrant was lacking in probable cause. As to the application being presented to another magisterial district judge, both magisterial district judges approved charges on almost identical warrants. (*Compare* ECF No. 61-4 *with* 61-5). What occurred was perhaps a technical failure of state criminal procedure, but the Court cannot identify any clear prejudice against Waller in this federal prosecution. The irregularities that occurred in issuing the March 1, 2024, arrest warrant did not result in or pertain to any violation of Waller's federal rights. All that Waller has come forth with are conclusory allegations. Suppression of the evidence seized on Waller's person during the effectuation of the arrest warrant for him on March 1, 2024, is unwarranted.

Finally, even assuming for the sake of argument that a substantial basis did not exist for the probable cause determination and/or that the technical issues with obtaining the arrest warrant somehow impaired its legal force, the evidence obtained would nevertheless be admissible under the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984). Under the good faith exception, suppression of evidence is "inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). The relevant inquiry in determining good-faith reliance is "whether a reasonably well-trained officer would have known that the search was illegal despite the . . . judge's authorization." *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (internal citations omitted); *see also Leon*, 468 U.S. at 922. In most cases, the good-faith showing is not a difficult one for the Government to make: "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307–08.

The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Zimmerman*, 277 F.3d 426, 436–37 (3d Cir. 2002) (quoting *Hodge*, 246 F.3d at 308). These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.'" *Id.* (quoting *Herring v. United States*, 555 U.S. 135 (2009)).

Waller does not claim that any of the four limited circumstances apply. (ECF Nos. 61 and 70). Any attempt to do so would be unavailing because there is nothing in the record to suggest that the state magisterial district judge issued the warrant in reliance on a deliberately or recklessly false affidavit, or that he abandoned his judicial role and failed to act in a neutral and detached manner. Similarly, any claim that the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized is unsupported by the record. Finally, as discussed above, the information in the arrest warrant established probable cause that Waller committed state crimes. Thus, it was entirely reasonable for the police to rely upon the arrest warrant. What transpired as to the effectuation of the arrest warrant is that Pittsburgh Police Department ("PBP") Detective Lucas Burdette ("Detective Burdette") became aware of the arrest warrant for Waller on March 1, 2024, when he reported to work and checked the standard arrest system. He verified the validity of the warrant by contacting his dispatch as well as speaking with the officer who obtained the warrant. (ECF No. 30, p. 10). Detective Burdette then located Waller on the city's surveillance cameras. (*Id*. at 11-12). He notified a supervising

11

sergeant for PBP in the area where Waller was located of the active warrant for Waller. (*Id.* at 12). Law enforcement then went to the store where Waller was located and found him sitting at a folding table. Waller was taken into custody and a loaded stolen firearm was recovered from his waistline. Also recovered was a large amount of crack cocaine (over 100 grams of cocaine base) and over $3,000 on his person. The officers were wearing body cameras, and the entire interaction with Waller was recorded. (*Id.* at 12-17).

In sum, the record does not support a finding that one of the four limited circumstances exists that would permit the avoidance of the good faith exception. The Court holds that the good faith exception would apply to the arrest of Waller, even if the March 1, 2024, arrest warrant was somehow deemed insufficient. Consequently, suppression is not warranted.

### III. CONCLUSION

For these reasons, the Court will deny Waller's suppression motion by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

___11/13/25_____
Date